UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE A. KAPLAN,

                Plaintiff           07 CV 8842 (RPP)
- against -

                              **OPINION AND ORDER**

BETH ISRAEL MEDICAL CENTER,

                Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Plaintiff Dr. Lawrence A. Kaplan filed his complaint in this matter, initially proceeding *pro se*, on October 15, 2007, alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), based on his termination as a director of the Petrie Laboratory, part of Defendant Beth Israel Medical Center. After approximately fifteen months of discovery, during which time Plaintiff obtained counsel, Defendant filed its motion for summary judgment on July 20, 2009. On August 10, 2009, Plaintiff filed his opposition to Defendant's motion for summary judgment, and Defendant submitted a reply on September 11, 2009. The Court heard oral argument on October 20, 2009. For the reasons discussed herein, Defendant's motion for summary judgment as to Plaintiff's age discrimination claim is granted.

## I. Facts

      The majority of facts material to Defendant's motion are undisputed. Plaintiff, Dr. Lawrence A. Kaplan ("Plaintiff") was hired in June of 2004 as one of the directors of the Petrie Laboratory ("Petrie"), part of Defendant Beth Israel Medical Center

("Defendant" or the "Hospital").[1]  (Def. 56.1 ¶¶ 2-3; Pl. 56.1 ¶ A2.)[2]  Plaintiff was hired by Dr. Bruce Wenig, who had ultimate responsibility for all Continuum laboratories. (Def. 56.1 ¶ 2; Pl. 56.1 ¶ A2.)  At the time Plaintiff was hired, he was 60 years old.  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ A2.)  Petrie's business of specimen analysis was an important source of revenue for the Hospital, and in 2005, Petrie experienced several problems with its specimen analysis systems, specifically turnaround time for samples.  (Def. 56.1 ¶¶ 4-6; Pl. 56.1 ¶¶ A4-A6.)  Problems in the laboratory pre-dated Plaintiff's arrival and there is no evidence to suggest that Plaintiff was to blame for the problems.  (Pl. 56.1 ¶ 6.)

In February 2006, Continuum hired Dr. Patricia Luhan as Executive Director for Pathology & Laboratory Medicine.  (Def. 56.1 ¶ 9.)  As of May 2006, the Continuum laboratories had three directors:  Plaintiff at Petrie; Dr. Ronald Gamardella at the St. Luke's/Roosevelt Lab; and Dr. Joseph Schappert of Beth Israel who oversaw both the St. Luke's/Roosevelt and Petrie laboratories.  (Def. 56.1 ¶ 12.)  Dr. Luhan suggested that Plaintiff be dismissed and Dr. Wenig agreed with and approved the decision.  (Def. 56.1 ¶ 14.)

Plaintiff's employment was terminated on or about August 16, 2006 in person by Dr. Luhan.  (Def. 56.1 ¶ 1; Pl. 56.1 ¶¶ A1, B18.)[3]  At the time, Dr. Luhan did not tell Plaintiff that the reason for his dismissal was a reduction in force, a reorganization or

---

[1] The Hospital is one of five distinct hospitals that comprise Continuum Health Partners ("Continuum"), a nonprofit hospital system in New York City.  (Def. 56.1 ¶ 1 n.1.)
[2] Defendant's Statement of Material Facts pursuant to Local Civil Rule 56.1 dated July 20, 2009 is referred to herein as "Def. 56.1"; Plaintiff's Response to Defendant's Local Rule 56.1 Statement and Affirmative Statement dated August 10, 2009 is referred to herein as "Pl. 56.1"; Defendant's Response to Plaintiff's 56.1 Opposition and Counter Statement dated September 11, 2009 is referred to herein as "Def. Reply 56.1."
[3] There appears to be disagreement over exactly what day Plaintiff was terminated – August 6, August 8 and August 16 are all cited as the date of his termination.  (See Def. 56.1 ¶¶ 1, 15; Pl. 56.1 ¶ 1.) These discrepancies are immaterial.

redundancy, nor did she provide him with a letter to that effect. (Pl. 56.1 ¶ B23.) At the time of his dismissal, Plaintiff was 62 years old and the two individuals responsible for the decision to terminate his employment, Drs. Wenig and Luhan, were 51 and 59, respectively. (Def. 56.1 ¶¶ 2, 9; Def. Reply 56.1 ¶ B35.) At the time of Plaintiff's dismissal, the two remaining directors, Drs. Schappert and Gambardella were 57 and 59, respectively. (Def. 56.1 ¶¶ 13, 21.) Both Drs. Schappert and Gambardella were hired as directors before Plaintiff and therefore had more seniority as directors at Continuum than Plaintiff. (Def. 56.1 ¶ 13; Pl. 56.1 ¶ A13; Def. Reply 56.1 ¶ A13.)[4]

By letter dated August 1, 2006, Dr. Luhan gave 90 days notice that Defendant was terminating the contract of another age-protected individual, Stuart Seidman, pursuant to the terms of his written contract. (Def. 56.1 ¶ 22.) Unlike Plaintiff, Mr. Seidman was an independent contractor and not an employee of the Hospital, he worked in sales and marketing, not clinical pathology, and he had an MBA degree, not a Ph.D or M.D. (Id.) After further conversations between Mr. Seidman and the Hospital, Mr. Seidman's contract was not terminated on November 1, 2006, and instead his time working at the Hospital was reduced from five days per week to two days per week. (Def. 56.1, Ex. R.)

The parties disagree over the reason for Plaintiff's dismissal. Plaintiff argues that he was dismissed as a result of age discrimination. Defendant claims that Plaintiff was dismissed as a result of a reorganization plan for Continuum's specimen lab work, proposed and put into place by Dr. Luhan, whereby one director position was eliminated

---

[4] Plaintiff denies the fact that Dr. Gambardella was senior to Plaintiff, but concedes that Dr. Gambardella was hired one year prior to Plaintiff. (Pl. 56.1 ¶ A13.) Plaintiff's assertion that Defendant "did not provide evidence that [Dr. Gambardella] was senior to Dr. Kaplan from a qualitative standpoint" (Id.) is not responsive to the issue of seniority.

3

in order to streamline the chain of command, which Drs. Wenig and Luhan hoped would decrease specimen turnaround times and improve business operations. (Def. 56.1 ¶¶ 9-14.) Defendant claims that Dr. Luhan selected Plaintiff for dismissal because he had the least seniority among the three directors. (Def. 56.1 ¶ 13.) Plaintiff disputes Defendant's justification for his termination and argues that the proffered reason is merely a pretext for discrimination.

## II. Discussion

### A. Applicable Law

In order to meet its burden on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010). The non-moving party, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In order for Plaintiff to survive a motion for summary judgment, he must come forward with evidence sufficient to carry his initial burden of showing a *prima facie* case

of age discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). The *prima facie* case for age discrimination under the ADEA involves four elements. Plaintiff must first show that (i) he was of a protected age; (ii) he was qualified for his job; (iii) he was discharged from his job; and (iv) the discharge occurred in circumstances giving rise to an inference of age discrimination. See Gorzynski, 596 F.3d at 107; Pena v. Brattleboro Retreat, 702 F.2d 322, 324 (2d Cir. 1983); Montana v. First Federal Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 105 (2d Cir. 1989). It is undisputed that Plaintiff meets the first three elements of his *prima facie* case.

Recently, the United States Supreme Court clarified that, in order to make out a claim of age discrimination under the ADEA, a plaintiff must show that "age was the 'but-for' cause of the employer's adverse action," and the ADEA does not authorize mixed-motives age discrimination claims. Gross v. FBL Fin. Servs., Inc., ____ U.S. ___, 129 S. Ct. 2343, 2350-51 (2009). While Gross could be read to alter the fourth element of a *prima facie* claim under the ADEA, at least one Second Circuit decision has left the four elements unchanged after Gross. See Gorzynski 596 F.3d at 107. Further, while both parties note the Gross decision in their briefing, the case was decided only one moth before the opening brief was filed in this motion and both parties assume the Plaintiff need only show circumstances giving rise to an inference of discrimination in order to establish the fourth element of his *prima facie* case.

Once Plaintiff has put forth sufficient evidence to establish his *prima facie* case, the Court will employ the familiar evidentiary burden shifting of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). While the Supreme Court in Gross noted that it had never definitely decided whether the evidentiary framework of McDonnell Douglas is

5

appropriate in ADEA cases, Gross, 129 S. Ct. at 2349 n.2, it did not reject that practice. See Gorzynski, 596 F.3d at 106 (noting that Gross did not reject McDonnell Douglas for ADEA claims and stating "we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit"). Therefore, if Plaintiff succeeds in establishing a *prima facie* case of age discrimination, the burden of production shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's dismissal. Leibowitz v. Cornell University, 584 F.3d 487, 498-99 (2d Cir. 2009) (quoting Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)). If Defendant carries its burden, the burden shifts back to Plaintiff to prove that the nondiscriminatory reason offered by Defendant was merely a pretext for discrimination. Leibowitz, 584 F.3d at 499 (citations omitted).

**B. Prima Facie Case of Age Discrimination**

Because there is no dispute as to the first three elements of Plaintiff's *prima facie* case, only the fourth element is at issue – whether Plaintiff's discharge occurred in circumstances giving rise to an inference of age discrimination. Plaintiff first argues that he has established facts sufficient to give rise to an inference of age discrimination because, at or around the time of his termination, another age-protected individual – Stuart Seidman – was terminated by Defendant. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp'n") at 14.) However, it is undisputed that Mr. Seidman: (i) was an independent contractor and not an employee of the Hospital; (ii) worked in sales and marketing, not clinical pathology; and (iii) did not have an M.D. or Ph.D. (Def. 56.1 ¶ 22; Pl. 56.1 ¶¶ A22, B28-B30; Def. Reply 56.1 ¶¶ A22, B29.) While two workers need not be of the exact same level or rank

to be considered "similarly situated" for employment discrimination purposes, see Gorzynski, 596 F.3d at 109 n.7, and an employer's treatment of a worker may be relevant to the issue of discriminatory intent even if that worker is not "similarly situated" to a plaintiff, id., in this case, Plaintiff has not argued that Mr. Seidman, who was not involved in Continuum's specimen lab work, was similarly situated to Plaintiff.  Further, Plaintiff has failed to demonstrate why Defendant's treatment of Mr. Seidman – not an employee, but an independent contractor who was given notice of termination per the express terms of his contract – is material to whether Plaintiff's discharge as an employee raises an inference of age discrimination in employment.  Because Mr. Seidman was an independent contractor, not an employee, and Plaintiff has not shown that he was similarly situated to Plaintiff, Defendant's notice that it would terminate Mr. Seidman's contract (which was later changed from a termination to a reduction in hours (Def. 56.1, Ex. R)), does not raise a genuine issue of fact material to whether Defendant's termination of Plaintiff as an employee raises an inference of age discrimination.

   Next, Plaintiff argues that he was initially replaced by Dr. Ronald Gambardella, who is three years younger than Plaintiff.  (Pl. Opp'n at 14.)  Plaintiff's suggestion that Dr. Gambardella replaced Plaintiff is without support in the record.  While Dr. Gambardella took over many of Plaintiff's former duties at the Petrie Lab, it is undisputed that when Plaintiff was terminated in August 2006, the number of lab directors between Petrie and St. Luke/Roosevelt decreased from three to two and no one was hired as a third director subsequent to Plaintiff's termination.  (Def. 56.1 ¶¶ 12, 13, 15, 21; Pl. 56.1 ¶ B37; Def. Reply 56.1 ¶ A15.)  Therefore, because Plaintiff's director

7

position was eliminated and never re-filled, there is no basis to conclude that Plaintiff was "replaced" by Dr. Gambardella.

Finally, Plaintiff argues that in the three months following Plaintiff's termination, Defendant hired three new pathologists, ages 37, 41 and 39. (Pl. Opp'n at 16; Pl. 56.1 ¶¶ A21, B36.) However, it is undisputed that the three new hires were staff pathologists as opposed to directors. (Def. Reply 56.1 ¶¶ A21, B36.) Therefore, the new pathologists were not similarly situated to Plaintiff and did not "replace" Plaintiff after his termination. Plaintiff cites one case for the proposition that "an employer's decision to terminate even just two older employees and none of the younger employees can constitute facts creating an inference of discrimination rendering summary judgment inappropriate," (Pl. Opp'n at 13-14 (citing Maresco v. Evans Chemetics, Div of W.R. Grace & Co., 964 F.2d 106, 113 (2d Cir. 1992)), but Plaintiff's reliance on this case is misplaced. In Maresco, out of 23 similarly-situated accounting staff members, two out of three age-protected employees were dismissed while zero out of twenty non-age-protected employees were dismissed. Maresco, 964 F.2d at 108, 112. The Second Circuit found those facts sufficient to raise an inference of age discrimination. Id. at 112. Here, the reorganization involved only three similarly-situated directors – Drs. Kaplan, Gambardella and Schappert – and all were age-protected at the time of Plaintiff's termination. The hiring of non-similarly-situated younger staff members subsequent to Plaintiff's termination does not raise an inference of age discrimination or create a genuine issue of material fact as to the reason for Plaintiff's termination as a director.

In addition to Plaintiff's failure to establish an inference of age discrimination with facts he adduced through discovery, Defendant cites facts that it argues preclude an

inference of age discrimination. First, Defendant points out that the similarly-situated employee who took over some of Plaintiff's responsibilities after his termination (Dr. Gambardella) was also age-protected and only three years younger than Plaintiff. (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Mem.") at 3, 6.) See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 79 (2d Cir. 2005) (holding that knowledge on the part of defendant as to *significant* age discrepancy between plaintiff and replacement employee is a necessary component of ADEA *prima facie* case). See also id. at 78 & n.9 (declining to draw a bright line as to what constitutes significant age discrepancy and comparing Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001) (22-year age discrepancy supports inference of age discrimination), with Hoffmann v. Primedia Special Interest Publ'ns, 217 F.3d 522, 525 (7th Cir. 2000) (three-year age difference does not support inference of age discrimination)). Plaintiff responds by merely noting that "Dr. Kaplan need not show that he was replaced by someone younger." (Pl. Opp'n at 14 (citing Montana, 869 F.2d at 105).) Plaintiff's reasoning misses this point. In order to survive a motion for summary judgment, it is Plaintiff's burden to establish a *prima facie* case. Where, as here, Plaintiff has not raised an inference of age discrimination by facts other than Plaintiff's age, Defendant's argument that the remaining similarly-situated employee who took over some of Plaintiff's responsibilities after his termination was not significantly younger than Plaintiff further supports the conclusion that Plaintiff has not established a *prima facie* claim under the ADEA. See Woodman, 411 F.3d at 79; Emanuel v. Oliver, Wyman & Co., LLC, 85 F. Supp. 2d 321, 330 (S.D.N.Y. 2000) (summary judgment

granted in favor of defendant because, *inter alia*, plaintiff was not replaced by a younger employee).

Next, Defendant points out that the same individual who hired Plaintiff – Dr. Wenig – was also one of the two individuals involved in his termination, and therefore, the "same actor doctrine" negates any inference of age discrimination. (Def. Mem. at 7.) See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."). See also Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (citing Grady and describing the same actor doctrine as a "highly relevant factor in adjudicating a motion for summary judgment on an ADEA claim"). There is no factual dispute that Dr. Wenig hired Plaintiff. While Dr. Luhan had the idea to terminate Plaintiff and personally terminated Plaintiff, there is no genuine factual dispute that Dr. Wenig approved and authorized Plaintiff's termination. (Def. 56.1 ¶ 14.) Plaintiff's argument that the same actor doctrine should not apply therefore rings hollow.

Finally, Defendant points out that the fact Plaintiff was within the age-protected class when hired further undermines an inference of age discrimination. (Def. Mem. at 6.) See Kalra v. HSBC Bank USA, N.A., 567 F. Supp. 2d 385, 398 n.9 (E.D.N.Y. 2008) (collecting cases and noting that "although not a dispositive factor, any inference of discrimination is further undermined by the fact that plaintiff . . . was 'well within the protected class when first hired'). Again, there is no dispute of fact that Plaintiff was age-protected at the time of his hire, and this fact weighs against an inference of age discrimination.

10

In summary, Plaintiff has failed to come forward with a genuine issue of fact material to the sole contested element of Plaintiff's *prima facie* case – whether Plaintiff's discharge occurred in circumstances giving rise to an inference of age discrimination. Further, the undisputed facts cited by Defendant weigh against finding an inference of age discrimination. Plaintiff has failed to establish a *prima facie* case under the ADEA and has failed to fulfill his burden in opposing Defendant's motion for summary judgment.

## C.  Non-discriminatory Reason and Pretext

Because Plaintiff failed to establish a genuine issue of fact material to his *prima facie* case of age discrimination, the second and third steps in the McDonnell Douglas burden shifting analysis – namely, Defendant's proffered nondiscriminatory reason for Plaintiff's termination and Plaintiff's arguments that Defendant's reason was mere pretext – do not merit extensive discussion. It is worth noting, however, that even if Plaintiff had established a *prima facie* case, Defendant offered a nondiscriminatory reason for Plaintiff's termination, supported by extensive deposition testimony. Plaintiff's dismissal was the result of a reorganization plan for Continuum's specimen lab work proposed and put into place by Dr. Luhan, whereby one director position was eliminated in order to streamline the chain of command, and Dr. Luhan picked Plaintiff for dismissal because he had the least seniority among the three directors. (See Def. 56.1 ¶¶ 9-15.)

Plaintiff makes numerous arguments that Defendant's proffered reason was pretext, all of which fall within two general categories:  (1) A reorganization could not have been the true reason for his termination because Plaintiff was not in fact redundant

at the time of his dismissal (See Pl. 56.1 ¶¶ A12, A14, B13, B17, B20-B34); and (2) A reorganization could not have been the true reason for his termination because Dr. Luhan did not in fact conduct an analysis of the Petrie Laboratory as she claims to have done (See Pl. 56.1 ¶¶ A11, A12, B16, B23). Neither of Plaintiff's theories demonstrates that Defendant's stated reason was a pretext for age discrimination and Plaintiff points to no discovery showing these theories have any basis in fact. Plaintiff's assertion that he was not actually redundant in August 2006 merely demonstrates his displeasure with Dr. Luhan's decision and questions her business judgment. Similarly, his assertion that Dr. Luhan did not conduct an analysis of the Petrie Laboratory merely demonstrates Plaintiff's displeasure with Dr. Luhan's methods and his displeasure with the fact that he was not consulted during the reorganization process. Plaintiff's arguments fail because Plaintiff has offered no factual support for his conclusions and under those circumstances a court will not second-guess an employer's business decisions. See Scaria v. Rubin, 117 F.3d 652, 654-55 (2d Cir. 1997). The theories by which Plaintiff argues pretext may cast doubt on the wisdom of the nondiscriminatory reason offered by Defendant but do not provide any factual evidence suggesting the justification offered by Defendant is not the reason Plaintiff was terminated.

### III. Amended Complaint

At oral argument on Defendant's motion for summary judgment, the Court granted Plaintiff's then-pending motion to file an amended complaint. See Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend "shall be freely given when justice so requires"). On November 16, 2009, Plaintiff filed his amended complaint, adding four additional causes of action as counts two through five: breach of

contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; and quantum meruit. All of the new causes of action are state law claims. Because Plaintiff and Defendant are both citizens of New York, the Court does not have original jurisdiction over the added claims and because the new claims were only added while the Court was considering the instant motion for summary judgment on the ADEA claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment as to Plaintiff's ADEA claim (count one of the amended complaint) is granted. Plaintiff's state law claims (counts two through five of the amended complaint) are dismissed without prejudice to Plaintiff re-filing in state court.

IT IS SO ORDERED.

Dated: New York, New York
March 31, 2010

Robert P. Patterson, Jr.

U.S.D.J.

13

Copies of this order were faxed to:

*Counsel for Plaintiff:*

Alison Grace Greenberg
The Law Offices of Alison Greenberg, LLC
14 Penn Plaza, Suite 2116
New York, NY 10122
Fax: (212) 390-2889


*Counsel for Defendant:*

Ricki E. Roer
Jennifer A. Yasko
William F. Cusack III
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
Fax: (212) 490-3038